**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| **LINDA TRENETT MCCOY,** | |
| **A/K/A LINDA TRENETT HAYS** | **CASE NO. 07-02998-EE** |
| | |
| **LINDA TRENETT MCCOY,** | |
| **A/K/A LINDA TRENETT HAYS** | **PLAINTIFF** |
| VS. | **ADVERSARY NO. 08-00175-EE** |
| **MISSISSIPPI STATE TAX COMMISSION** | **DEFENDANT** |

| | |
|---|---|
| Richard R. Grindstaff | Attorney for Debtor |
| Post Office Box 720517 | |
| Byram, MS 392272 | |
| | |
| Stephanie Jones | Attorney for Mississippi State Tax Commission |
| Post Office Box 1033 | |
| Jackson, MS 39215 | |

Edward Ellington, Judge

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE *MOTION TO DISMISS***

This matter came before the court on the *Motion To Dismiss* filed by the Mississippi State Tax Commission and the *Response in Opposition to Defendant's Motion To Dismiss* filed by the Debtor, Linda Trenett McCoy, a/k/a Linda Trenett Hays. After considering the pleadings and the briefs filed by the parties, the Court finds for the following reasons that the motion is well taken and should be granted.

**FINDINGS OF FACT**

Linda Trenett McCoy ("McCoy") filed a voluntary chapter 7 bankruptcy petition on September 25, 2007. Approximately four months later on January 23, 2008, the Court granted McCoy a discharge under 11 U.S.C. § 727.[1] There was no distribution to creditors, and her case was closed as a no-asset case. McCoy returned to this Court on December 3, 2008, in order to commence this post-discharge adversary proceeding against the Mississippi State Tax Commission ("MSTC"). In her *Second Amended Complaint To Determine Dischargeability of Debt*,[2] McCoy seeks a declaration from this Court that her debt to the State of Mississippi for pre-petition income taxes arising out of her tax obligations for the 1998 and 1999 tax years were discharged in her bankruptcy.[3] McCoy alleges in her complaint that the debt was discharged because the statutory limitation periods described in §§ 507(a)(8) and 523(a)(1) of the Bankruptcy Code had already passed when she filed for bankruptcy protection.

On March 16, 2009, the MSTC filed a *Motion To Dismiss*.[4] In its motion, the MSTC seeks

---

[1] Unless otherwise noted, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code.

[2] This is actually the fourth complaint filed by McCoy. Because McCoy filed her fourth complaint before entry of an order allowing the amendment, this Court on motion *ore tenus* entered an *Order* clarifying that her *Second Amended Complaint To Determine Dischargeability of Debt* superseded all antecedent complaints.

[3] By *Agreed Order*, McCoy dismissed with prejudice her dischargeability claim as to her debt for tax years 1993 through 1997 and 2000. Only the issue of dischargeability as to the tax years 1998 and 1999 remains for decision.

[4] While this motion was pending, McCoy filed the complaint that is the subject of this proceeding. This Court on motion *ore tenus* entered an *Order* clarifying that this motion to dismiss addresses the allegations in McCoy's *Second Amended Complaint To Determine Dischargeability of Debt.*

2

dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure,[5] on the ground that this adversary proceeding violates the immunity from suit granted to the State of Mississippi and its agencies (including the MSTC) by the Eleventh Amendment to the United States Constitution and, therefore, this Court should dismiss McCoy's complaint for lack of subject matter jurisdiction. The MSTC points out that it did not file a proof of claim in McCoy's bankruptcy case, did not participate in the case, and did not commit any other act that would constitute a waiver of its immunity. The MSTC also seeks dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that § 523(a) specifically provides an exception from discharge of McCoy's pre-petition tax liabilities at issue, and thus her complaint fails to state a claim upon which relief can be granted.

On May 5, 2009, the MSTC submitted a *Brief in Support of Motion To Dismiss*. In a footnote at the end of its brief, the MSTC mentions its sovereign immunity argument and states that it "does not brief this complex, constitutional issue and reserves this argument to be heard at a later time." The brief instead concentrates on the MSTC's contention that McCoy's complaint does not contain sufficient factual allegations to show that she filed a tax return within the meaning of § 523, because the definition in that provision requires that a return satisfy the requirements of applicable non-bankruptcy law, including applicable filing requirements. In Mississippi, to constitute an individual income tax return, a document (1) must be made under the penalties of perjury; (2) must specifically state the taxpayer's gross income as well as any deductions and exemptions; and (3) must be filed on or before April 15th of each year. Miss Code Ann. §§ 27-7-31 and 27-7-41. The MSTC insists that McCoy's complaint does not allege any facts addressing these requirements.

---

[5] Rule 12(b) of the Federal Rules of Civil Procedure is made applicable to bankruptcy cases by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

3

On May 11, 2009, McCoy filed *Plaintiff's Response in Opposition to Defendant's Motion To Dismiss*, in which she claims, without elaboration, that the sovereign immunity of the MSTC is abrogated by §106[6] of the Bankruptcy Code. McCoy also claims that her pre-petition tax liabilities do not fall within the exception from discharge found in § 523(a)(1) because she filed her returns for the 1998 and 1999 tax years before the MSTC assessed her tax liabilities for those years.

McCoy attached to her response copies of two letters addressed to her from the MSTC and a document that purports to be a summary of contacts between the MSTC and McCoy or her attorney. The writer of the first letter, a tax auditor for the MSTC, acknowledges receipt of McCoy's returns for the 1998 and 1999 tax years and informs McCoy of favorable adjustments made to her tax liability based on the information provided in the returns. McCoy relies on the date of this letter, September 11, 2002, as establishing the filing date of the tax returns at issue in this proceeding. The letter ends by assessing McCoy for taxes, interest and penalties in the amount of $84,117 for the 1998 tax year and $52,280 for the 1999 tax year.

In the second letter, dated November 18, 2004, an attorney for the MSTC answers several questions previously posed by McCoy related to the agency's refusal to adjust certain tax obligations not at issue in this proceeding. Although the letter does not mention her 1998 or 1999 tax returns, McCoy contends that it supports her position that she filed them within the meaning of § 523, because of the following language:

> As to your third question as to when and under what conditions the Commission will accept or not accept State Tax Return, I am not sure to what you are referring. If you are referring to the situation where a return is filed prior to an assessment, those returns which are complete and signed are always accepted, but are also always

---

[6] Section 106 provides, in pertinent part, that "sovereign immunity is abrogated as to a governmental unit . . . with respect to . . . Section[ ] . . . 523 . . . ." 11 U.S.C. § 106.

4

subject to audit. If you are referring to the situation as in the present case where the taxpayer is attempting to file returns after an assessment has become final, the return itself is not accept [sic] as a return, but the information in the return may be used to make adjustments . . . .

The third and final exhibit attached by McCoy to her response is entitled "TIMELINE OF LETTERS & CALLS TO & FROM T/P, Attorney & Tax Return Preparer," which apparently was prepared by the MSTC. Under the heading "Non Filer Income Tax Audit" is a list of dates beginning with April 3, 2002, and the actions purportedly taken on each such date with respect to the assessment of McCoy's tax liabilities for the years 1996 through 2000. The entries indicate that the MSTC first contacted McCoy "requesting returns" on April 3, 2002, that the MSTC received returns from her for the tax years 1996 through 1999 on July 22, 2002, that the MSTC sent them back to her on that same date because she failed to sign them, that the MSTC received copies of the returns to which she attached amended federal tax returns on September 11, 2002, and that the MSTC wrote a letter to McCoy on September 17, 2002, informing her of certain adjustments to her 1998 and 1999 tax debts pursuant to the amended returns and requesting additional information. The timeline ends with the notation that since September 11, 2002, "There has been no other response [from McCoy]."

Notably absent as exhibits to McCoy's pleadings are copies of the tax returns for the tax liabilities at issue in this proceeding.

In her *Brief in Opposition to Defendant's Motion To Dismiss*, which McCoy filed simultaneously with her response, McCoy reiterates the arguments she presented in her response and, in addition, contends that her exhibits show that she filed her returns on September 11, 2002, and that the assessment was made later on September 17, 2002. She specifically alleges

that her tax debt meets the three-part test for dischargeability under § 523(a)(1), including the 2005 amendments.

On May 20, 2009, the MSTC filed its *Response to Plaintiff's Brief in Opposition to Defendant's Motion To Dismiss and Plaintiff's Response in Opposition to Defendant's Motion To Dismiss*. The MSTC contends that McCoy's factual allegations are insufficient to raise a right to relief because she admits that her tax returns were filed on September 11, 2002, well past the deadline established by state law.

## CONCLUSIONS OF LAW

### I.

The Court has jurisdiction in this post-discharge adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

### II.

#### A.

The MSTC in its brief asks this Court to rule on its Rule 12(b)(6) motion without reaching its sovereign immunity defense. Although the MSTC could have waived its immunity in this proceeding, it has chosen instead to reserve the issue for resolution at a later date, presumably only if McCoy's complaint survives MSTC's Rule 12(b)(6) motion.

The United States Supreme Court has recognized that it has not yet determined whether Eleventh Amendment immunity is a matter of subject matter jurisdiction.[7]  *See* Wisconsin

---

[7] Eleventh Amendment challenges are treated differently from challenges to a court's subject matter jurisdiction. For example, sovereign immunity is waivable, but subject matter jurisdiction is not. McDonal v. Abbott Labs., 408 F.3d 177, 182 (5th Cir. 2005).

6

Dep't of Corrections v. Schacht, 524 U.S. 381, 391 (1998). The United States Court of Appeals for the Fifth Circuit, however, has held that the immunity issue is sufficiently jurisdictional in nature so that a court must resolve the issue before reaching the merits of the underlying claim. *See* United States *ex rel.* Foulds v. Texas Tech Univ., 171 F.3d 279, 285 n.9 (5th Cir. 1999). Accordingly, this Court may not assume that it has authority to resolve this matter on what the MSTC views as a less complicated issue, regardless of the alleged weakness of McCoy's dischargeability claim. *See* Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 92 (1998) (rejecting doctrine of "hypothetical jurisdiction").

Therefore, this Court must begin by addressing the threshold issue of sovereign immunity. Under the Eleventh Amendment, the jurisdiction of the federal courts "shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the text of the Eleventh Amendment refers only to suits against a state by citizens of another state, the Supreme Court has interpreted it more broadly than its language suggests by holding that an unconsenting state is also immune from suits by its own citizens. Hans v. Louisiana, 134 U.S. 1 (1890).

In its motion to dismiss, the MSTC claims that its refusal to consent to this Court's jurisdiction deprives this Court of jurisdiction over it. The Supreme Court's decisions in Central Virginia Community College v. Katz, 546 U.S. 356 (2006) and Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440 (2004), however, establish beyond peradventure that a proceeding to obtain the discharge of a debt in bankruptcy is not barred by the Eleventh Amendment.

The Hood case is highly analogous to the facts presented here. In that case, Pamela

7

Hood filed an adversary proceeding in her chapter 7 case against the Tennessee Student Assistance Corporation, a state agency. She sought a determination of undue hardship, a necessary finding under § 523(a)(8) for the discharge of her student loan debts. The Supreme Court rejected the agency's contention that the bankruptcy court lacked jurisdiction to discharge her loans because of the Eleventh Amendment. *Id*. at 450. As the Hood Court explained, "[t]he discharge of a debt by a bankruptcy court is . . . an *in rem* proceeding" and the exercise of the bankruptcy court's *in rem* jurisdiction to discharge a debt does not implicate the Eleventh Amendment. Hood, 541 U.S. at 447, 450.

The Supreme Court in Katz broadened the Hood decision by holding that proceedings ancillary to *in rem* actions likewise do not implicate sovereign immunity. The Katz Court went so far as to denounce the *dicta* of its previous ruling in Seminole Tribe of Florida v. Florida**,** 517 U.S. 44 (1996), that states are protected by sovereign immunity in bankruptcy cases. Katz, 546 U.S. at 363.

Neither Hood nor Katz resolved the broader question as to whether §106 of the Bankruptcy Code constitutes a valid abrogation by Congress of sovereign immunity in bankruptcy cases, as suggested by McCoy in her response. This Court does not need to reach that issue in this proceeding because applying Hood and Katz to the instant case, it is abundantly clear that McCoy's adversary proceeding to determine the dischargeability of her tax debt in no way infringes the sovereignty of the MSTC. *See also* In re Soileau, 588 F.2d 302 (5th Cir. 2007) (rejecting sovereign immunity claim of State of Texas in bankruptcy case where licensed bail bondsman sought to discharge money judgments obtained against her), *cert*. *denied*, 128 S. Ct. 1220 (2008). The proceeding at issue here is purely *in rem* and is clearly one

8

countenanced by Hood and Katz. The MSTC's sovereign immunity claim fails.

**B.**

The MSTC's alternative argument for dismissal is that McCoy's complaint fails to state a claim upon which relief can be granted. The pleading standards that apply to a Rule 12(b)(6) motion to dismiss arise out of the requirement in Rule 8(a)(2) that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court explained that to survive such a motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In Twombly the Supreme Court revisited the often-quoted language in its decision in Conley v. Gibson, 355 U.S. 41(1957), that a complaint should not be dismissed at the pleading stage "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim," *id*. at 45-56, and concluded that courts had interpreted the "no set of facts" language too literally. Twombly, 550 U.S. at 561-62.

More recently, in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court described application of the "plausibility" standard in Twombly as a two-part analysis. First, a court should begin by identifying those allegations in the complaint that, unlike non-conclusory, factual allegations, are not entitled to the assumption of truth. Iqbal, 129 S. Ct. 15 1949-50. A pleading that includes "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Second, a court should determine whether the non-conclusory factual allegations in the complaint plausibly suggest a claim for relief. Iqbal, 129 S. Ct. at 1950. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint

9

are true (even if doubtful in fact). Twombly, 550 U.S. at 555. Although Rule 8 does not require "detailed factual allegations," a complaint must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true, nudge the claim across the line from conceivable to plausible.

McCoy's complaint contains few factual allegations.[8] Other than a recitation of the parties and jurisdiction, her only factual allegation is that she owes pre-petition taxes to the MSTC for the 1998 and 1999 tax years. In her response to the *Motion To Dismiss*, she relies on her attached exhibits[9] to show that she filed her returns for the tax years in question on September 11, 2002 and that the MSTC assessed the taxes for those years on September 17, 2002. With these factual allegations in mind, this Court must determine whether her pleadings plausibly support her claim that her tax debt was discharged in her bankruptcy case pursuant to § 523(a)(1).

There is a series of provisions in the Bankruptcy Code that governs the priority, discharge, and collection of income tax claims. Section 507(a)(8)(A) grants priority status to

---

[8] In addition to her initial complaint, McCoy filed three amended complaints and, thus, has had four opportunities to allege sufficient facts to support her dischargeability claim.

[9] Generally, an analysis of a Rule 12(b)(6) motion is confined to a review of the pleadings and for this reason, materials submitted outside the pleadings will convert a Rule 12(b)(6) motion to a summary judgment motion under Rule 56. Here, McCoy attached three documents to her response to the motion to dismiss, all of which appear to be central to her dischargeability claim. Such documents, when attached as exhibits to a pleading, become part of the pleading under Rule 10(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7010 of the Federal Rules of Bankruptcy Procedure. For this reason, this Court may properly consider them in ruling on the MSTC's motion to dismiss. *See, e.g.*, In re Katrina Canal Breaches Litig., 495 F.2d 191, 205 (5th Cir. 2007); Neville v. American Republic Ins. Co., 912 F.2d 813, 814 n.1 (5th Cir. 1990). In that regard, this Court notes that the MSTC referenced the documents in its briefs and did not question their authenticity.

claims for income taxes "for a taxable year ending on or before the date of the filing of the petition . . . for which a return if required, is last due, including extensions, after three years before the date of the filing of the petition" and those "assessed within 240 days before the date of the filing of the petition, exclusive of . . . any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and . . . any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days." 11 U.S.C. § 507(a)(8)(A)(i) and (a)(8)(A)(ii). As a corollary, § 523(a)(1) excepts from § 727 discharge: (a) tax debts treated under § 507(a)(8) as priority claims; (b) tax debts related to tax returns that were never filed or given; and (c) tax debts related to tax returns filed both late and after two years before the date of the filing of the petition. § 523(a)(1)(A), (a)(1)(B)(i), and (a)(1)(B)(ii).

The limitations periods set forth in §§ 507(a)(8)(A) and 523(a)(1) are known as the three-year, 240-day, and two-year limitations periods. These priority and nondischargeability provisions represent an effort to coordinate three conflicting goals: (a) to discourage debtors from using bankruptcy to escape recent tax obligations that the government has not had reasonable time to collect; (2) to protect unsecured creditors from the burden of an excessive accumulation of stale taxes, the collection of which could exhaust the estate; and (3) to grant the debtor a "fresh start" by discharging stale taxes. S. Rep. No. 95-989 (1978), *as reprinted in* Volume D <u>Collier on Bankruptcy</u> App. Pt. 4(e)(i) (Alan N. Resnick & Henry J. Sommer eds.,15th ed. rev.). In general, tax claims that are nondischargeable but lack priority are those that the debtor contributed in some way to their staleness by his own wrongdoing by, for example, failing to file tax returns, filing them late, or filing fraudulent returns. *See id.*

11

If this Court accepts as true McCoy's allegation that she filed valid tax returns for the 1998 and 1999 tax years in 2002, albeit three and two years, respectively, after they were due, then her tax debts clearly fall outside all three limitations periods. Her tax returns were last due on April 15, 1999, and April 15, 2000, which is not within the three-year lookback period before the date of the filing of her chapter 7 petition on September 25, 2007. Also, the MSTC did not assess the subject taxes within 240 days before September 25, 2007. Finally, she filed her belated returns in 2002, which is not within the two-year lookback period before the filing of her petition on September 25, 2007.

The MSTC does not claim that McCoy's tax liability is entitled to priority status. Rather, the MSTC contends that because her returns were untimely, they are not "returns" within the meaning of the statute. Therefore, she cannot discharge from liability the taxes she owed to the State of Mississippi for the 1998 and 1999 tax years. The MSTC relies on the following provision of § 523:

> § 523. Exceptions to discharge.
>
> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>   (1) for a tax . . .
>     (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;
>     (B) with respect to which a return, or equivalent report or notice, if required-
>       (i) *was not filed or given*.

11 U.S.C.§ 523 (emphasis added).

Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 119 Stat. 23, Pub. L. 109-8 (Apr. 20, 2005), the Bankruptcy Code did not define the term "return." This absence led courts to rely upon non-bankruptcy law to flesh out the

12

definition for dischargeability purposes. Most courts embraced the same test applied by the Supreme Court in determining whether a document constitutes a return for purposes of the Internal Revenue Code. *See* Zellerbach Paper Co v. Helvering, 293 U.S. 172, 180 (1934); Green v. Comm'r, 322 Fed. Appx. 412, 415 (5th Cir. 2009); Beard v. Comm'r, 82 T.C. 766 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986). Of significance to this matter, the test required that the document "[e]vince an honest and genuine endeavor to satisfy the law." Four circuit courts of appeal held that the belated filing of a tax return after the government had already gone to the trouble of calculating the tax due did not qualify as a valid return because it did not evince an honest endeavor to satisfy the tax laws. *See* In re Payne, 431 F.3d 1055, 1057 (7th Cir. 2005); In re Moroney, 352 F.3d 902, 906 (4th Cir. 2003); In re Hatten, 220 F.3d 1057 (9th Cir. 2000); In re Hindenlang, 164 F.3d 1029, 1034-35 (6th Cir.), *cert. denied*, 523 U.S. 810 (1999).

In 2005, BAPCPA amended § 523 by adding a "hanging paragraph" that defines the term "return" in a similar way:

> For purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law *(including applicable filing requirements)*. Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a)(*).[10] (emphasis added). Section 6020 of the Internal Revenue Code ("IRC"), 26 U.S.C. § 6020, provides the Secretary of the Treasury ("Secretary") with a mechanism for

---

[10] This definition is found in an unnumbered paragraph that immediately follows § 523(a)(19)(B)(iii). The MSTC cites it as § 523(a). This Court uses the asterisk that the Fifth Circuit has employed to cite to unnumbered, hanging paragraphs. *See, e.g.*, In re Miller, 570 F.3d 633 n.5 (5th Cir. 2009).

13

assessing the tax liability of a taxpayer who has failed to file a return. Under § 6020(a) of the IRC, the Secretary may prepare a "substitute" return based on information voluntarily provided by the taxpayer. In contrast, § 6020(b) of the IRC comes into play when there is little or no cooperation from the taxpayer. In that event, § 6020(b) of the IRC allows the Secretary to execute a "substitute" return based on whatever information he can obtain.

The new definition of "return" under § 523(a)(*) requires that a return meet the filing requirements of nonbankruptcy law and disqualifies "substitute" returns prepared by the Secretary, regardless of when filed, unless they are prepared pursuant to procedures under § 6020(a) of the IRC that require considerable cooperation from the taxpayer. In making a distinction based on the taxpayer's cooperation, BAPCPA is similar to the decisions of the circuit courts of appeal applying pre-2005 bankruptcy law.

As the MSTC aptly points out, the nonbankruptcy law applicable to this proceeding includes the provision of the Mississippi Income Tax Law that sets forth the timeliness of returns:

> Returns of individuals . . . shall be filed on or before the 15th day of the fourth month following the close of the fiscal year; or if the return is filed on the basis of a calendar year, it shall be filed on or before April 15 of each year.

Miss. Code Ann. § 27-7-41. The MSTC contends that because McCoy did not comply with Mississippi's "applicable filing requirements," her returns do not qualify for dischargeability under BAPCPA's new definition.

In an analogous case, Creekmore v. Internal Revenue Service ( In re Creekmore), 401 B.R. 748 (Bankr. N.D. Miss. 2008), Judge David W. Houston, III held that a debtor's federal income tax returns filed after they were due and after the Internal Revenue Service had filed

14

substitute returns under § 6020(b) of the IRC, did not qualify as returns under the new definition. "The definition of 'return' in amended § 523(a) apparently means that a late filed income tax return, unless it was filed pursuant to § 6020(a) of the Internal Revenue Code can never qualify as a return for dischargeability purposes because it does not comply with the 'applicable filing requirements' set forth in the Internal Revenue Code." Id. at 751. Although Judge Houston's decision is not binding on this Court, his analysis of § 523(a)(*) is an imminently reasonable interpretation of the plain language of the statute. See In re Miller, 570 F.3d 633 (5th Cir. 2009) (courts may not invalidate plain-text reading of BAPCPA).

McCoy attempts to distinguish the facts of Creekmore by insisting that the debtor in that case did not file his tax returns until after the taxes had been assessed, whereas McCoy filed her returns before the MSTC had rendered its assessment. McCoy's argument harkens back to pre-BAPCPA when returns filed late, but before any tax assessment, qualified for dischargeability, as discussed previously. Newly amended § 523(a)(*), however, does not differentiate between a late-filed return in this way unless it is filed pursuant to the safe harbor provision in § 6020(a) of the IRC or other similar provision under state law. McCoy does not allege that she did so in any of her pleadings. Indeed, Mississippi Income Tax Law does not include a provision similar to § 6020(a) of the IRC but does include a provision similar to § 6020(b) of the IRC. Under Miss. Code Ann. § 27-7-53(2), the chairman of the state tax commission may determine a taxpayer's liability from the best information available when the taxpayer himself fails to file a return, which is apparently what happened here. The third exhibit that McCoy attached to her response indicates that she filed her returns on September 11, 2002, only after considerable prodding by the MSTC and even then, that she did not fully cooperate with the tax auditor.

15

In short, McCoy's factual allegations, accepted as true, do not plausibly suggest that the income taxes she owed for the tax years 1998 and 1999 were discharged in her bankruptcy. She did not file either one of her "returns" by the 15th day of April following the end of the tax year and did not file either of them under a state law procedure similar to § 6020(a) of the Internal Revenue Code. Accordingly, her "returns" do not fall within BAPCPA's definition of a return under § 523(a)(*), and for that reason, the income taxes she owed for those years are nondischargeable under § 523(a)(1)(B)(i).

## CONCLUSION

Based on the foregoing, the Court concludes that the *Motion To Dismiss* filed by the MSTC is well taken and should be granted.

A separate judgment will be entered in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.

/s/ Edward Ellington
Edward Ellington
United States Bankruptcy Judge
Dated: August 31, 2009